(134 So. 369)

## JOHNSTON v. NATIONAL SAND & GRAVEL CO., Inc.

### No. 30723.

March 2, 1931.

Rehearing Denied April 27, 1931.

See, also, 170 La. 423, 127 So. 889.

Shelby S. Reid, of Amite, and Milling, God-chaux, Saal & Milling, of New Orleans, for appellant.

Michael M. Irwin and St. Clair Adams, both of New Orleans, and Ellis, Ellis & Ellis, of Amite, for appellee.

ST. PAUL, J.

This is an action to reinstate 250 shares of the capital stock of the defendant corporation, canceled by resolution of the board of directors for alleged want of consideration. The judgment below was for plaintiff, and defendant appeals.

The stock was issued in consideration of a lease to explore for gravel on certain lands in Tangipahoa parish, described as bounded on the east by the Tangipahoa river. In point of fact, the owner of the land, who had granted the lease to plaintiff, who assigned it to defendant, had previously sold to another gravel company a strip some 200 feet wide bordering on the river, thus cutting off the leased land from the waters of the river, which it is alleged were necessary for the operation of the gravel pits on the leased lands.

The evidence, however, satisfies us, as it did the trial judge, that the defendant knew this condition of affairs when it took the lease; and presumably they believed that arrangements could be made with the owners of that strip along the river to get water across that strip. And the proof is that they made no effort to get such permission to obtain the water. On the contrary, having obtained a similar lease on other lands, a little removed from the lands here concerned, they proceeded to operate on that other lease and entirely neglected the lease here involved. It is quite true that the lease is not as valuable as it would have been had the lands actually fronted on the river, but, as we have said before, the defendants knew those conditions when they took over the lease.

Moreover, the lease contained a condition that the lessee should pay the lessor at least $250 per month to preserve the lease; and for more than 18 months after such payments became due defendant utterly failed

and neglected to pay them; so that, if said lease has not actually been forfeited (as to which we express no opinion), it has at least been seriously jeopardized by such neglect and failure on the part of defendant. And as defendants waited nearly two years after the stock was issued, and 18 months after their failure to pay the rentals on the lease, before complaining of the same, they are now estopped from doing so, since they are not in a position to restore the lease to plaintiff in the same unimpeachable condition in which it was when they took it over from him.

■ The provisions of Const. 1921, art. 13, § 2, that "corporations shall not issue stock or bonds except for labor done, or money or property actually received; and all fictitious issues of stock shall be void," have no application here. There was here no fictitious issue of stock, for the corporation did actually receive property therefor. In Mackie Pine Products Co. v. Frederick, 148 La. 690, 87 So. 712, 713, relied on by defendants, the court said that the shares of stock were issued to the defendant "on the expectation that he would pay for same," and, as defendant had only partly paid for same, the court allowed him stock to the extent only that he had paid. But this is very different from a case like this where plaintiff actually gave to the corporation all that he promised and all that the corporation expected to receive. The purpose of the constitutional article is to prohibit a corporation from making any gratuitous disposition of its stock, not to prohibit corporations from issuing stock for services rendered or property received at a valuation honestly placed thereon by its board of directors.

■ Section 3 of Act No. 267 of 1914 does require that property given in exchange for stock shall be appraised by the board of directors, but it prescribes no special form of appraisement. And a resolution of the board of directors authorizing the purchase of property for so many shares of stock of the corporation is in effect an appraisement of such property as being worth the par value of such stock.

■ Moreover the section provides that the right to inquire into or recover for any excessive value on property acquired in exchange for stock shall be prescribed by five years from the date on which the property was transferred to the corporation. This clearly contemplates that such inquiry shall be before the courts, with opportunity on the part of the stockholder and other interested parties to be heard. It does not contemplate any peremptory and ex parte action by the corporation alone and even without prior notice to the stockholder as was done in this case. To permit that would be to permit one to be the judge in his own case and to condemn a person unheard, which is contrary to and subversive of every fundamental rule of common right and justice.

■ As to the provision of the section which requires the filing with the secretary of state and recorder of mortgages of the description and appraisement of the property taken in exchange for stock, that is purely directory. A failure on the part of the corporation to do so certainly cannot affect the rights of the stockholder, who has no control over the acts of the corporation and cannot be injured by the subsequent failure of the latter to comply with the law.

Decree.

The judgment appealed from is therefore affirmed.